IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SCOTT REARDON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:24-CV-00370-O |
| § | |
| AMERICAN AIRLINES INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendant's Motion to Dismiss and Appendix in Support (ECF Nos. 19–20); Plaintiff's Response (ECF No. 21); and Defendant's Reply (ECF No. 22). After examining the relevant authorities and arguments, the Court **GRANTS** Defendant's Motion.

**I.    BACKGROUND**[1]

Plaintiff Scott Reardon began working for Defendant American Airlines, Inc. ("American") in 1996 at the Boston Logan Airport. Plaintiff was a union representative for the Transport Workers Union Local 591 (the "Union").[2] Defendant and the Union are parties to a collective bargaining agreement ("CBA"), which defines and dictates the rate of pay, rules, working conditions, and scope of work for Union-represented employees.[3] The CBA was agreed upon after a significant arms-length negotiations on or around March 26, 2020.[4] The CBA provides that employees may be discharged for just cause:

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's First Amended Complaint. *See* Pl.'s Am. Compl., ECF No. 12. When subject matter jurisdiction is challenged on a Federal Rule of Civil Procedure 12(b)(1) factual attack, Plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[2] The Union is not a party in this suit.

[3] Def.'s App. Supp. Mot. to Dismiss 2–3 ¶ 12, ECF No. 20.

[4] *Id*.

1

> The Union recognizes that [American] will have sole jurisdiction of the management and operation of its business, the direction of its working force, the right to maintain discipline and efficiency in its hangars, stations, shops, or other places of employment, and the right of [American] to hire, discipline, and discharge employees for just cause, subject to the provisions of this Agreement.[5]

Additionally, the CBA provides for a grievance process when a union member employee "believe[s] they have been unjustly dealt with" or when "provision[s] of [the CBA] ha[ve] not been properly applied or interpreted."[6]

In early February 2021, Defendant received a report that Plaintiff stole food items from the American Airlines Admirals Club (the "Admirals Club") in the Logan Airport.[7] Defendant promptly began an internal investigation, wherein it interviewed several individuals, including employees working within the Admirals Club and Plaintiff's alleged accomplices.[8] On February 11, 2021, Defendant interviewed Plaintiff with a union representative present, during which Plaintiff admitted to taking food from the Admirals Club.[9] Plaintiff also admitted than he took food from the Admirals Club for seventeen years.[10] As a result of the investigation, Plaintiff was initially terminated from his employment with Defendant.[11] Two of Plaintiff's fellow employees were also investigated and terminated for theft from the Admirals Club.[12]

Plaintiff utilized the grievance process of as authorized by the CBA and, consequently, entered into a Settlement Agreement known as the Last Chance Agreement ("LCA").[13] Under the LCA, the parties recognized that Plaintiff "failed to adhere to [American's] policies and standards

---

[5] *Id.* ¶ 14.
[6] *Id.* ¶ 15.
[7] *Id.* at 46–47 ¶ 5.
[8] *Id.*
[9] *Id.* at 47 ¶¶ 6–7.
[10] *Id.* at 47 ¶ 7.
[11] *Id.* at 47 ¶ 9.
[12] *Id.* at 47 ¶ 8.
[13] *Id.* at 5 ¶ 20.

with respect to [American's] Rules of Conduct," and acknowledged that Defendant had "just cause" to terminate him.[14] The LCA provided Plaintiff with "a final opportunity to demonstrate [his] ability to comply with [American's] policies and procedures[.]"[15] The express terms of the LCA, which Plaintiff and the Union both agreed to, provided that: "Employee and the Union understand and agree that any single incident of a violation of [American's] policies and procedures, including but not limited to, the Rules of Conduct, during the term of this agreement will be just cause for Employee's immediate termination."[16] The LCA was to last for a term of twenty-four months from Plaintiff's return to work, which occurred on December 20, 2021.[17]

On October 22, 2023, only a few months before the expiration of his LCA, Plaintiff went into the Admirals Club while on duty.[18] American's employee Travel Guide AA20/AAdvantage award promotion and Admirals Club guidelines (the "Admirals Club Policy"), states "access [to the Admirals Club] is prohibited" to all non-traveling employees, as "[t]he Admirals Club membership is not intended for team members to utilize before, during and after work hours."[19]

Russ Lariviere[20] and Jim Cole,[21] two union members who Plaintiff claims had animosity towards him, reported Plaintiff's violation of the Admirals Club Policy to Defendant. On October 26, 2023, during a meeting with Defendant, Plaintiff admitted to entering the Admirals Club on October 22, 2023.[22] Following this meeting, Plaintiff was terminated by Richard Gilmore, the

---

[14] *Id.* at 5 ¶ 21.
[15] *Id.*
[16] *Id.* at 22.
[17] *Id.*
[18] *Id.* at 48 ¶ 3.
[19] *Id.* at 44.
[20] Plaintiff claims that "tension arose between [Lariviere] and [Plaintiff]" because Plaintiff notified Lariviere, his supervisor, of "numerous safety issues and workplace concerns on behalf of himself and his fellow Union members." Pl.'s Am. Compl. ¶ 20, ECF No. 12.
[21] Plaintiff claims that Cole had personal animosity towards him because Plaintiff proposed "the Union to bid on a maintenance contract that was being distributed to an outside vendor" because "the representative for the contracting vendor was [Cole's] friend." Pl.'s Am. Compl. ¶¶ 14–15, ECF No. 12.
[22] Def.'s App. Supp. Mot. to Dismiss 49 ¶ 4., ECF No. 20.

Senior Manager of Facility Maintenance for Plaintiff's violation of his LCA. Plaintiff's two fellow employees, who were also placed on LCA for stealing food from the Admirals Club, successfully complied with all terms of their LCAs and remain presently employed with American.[23]

Plaintiff initiated this lawsuit against Defendant for retaliatory termination in violation of the Railway Labor Act Third and Fourth.[24] Defendant now moves to dismiss Plaintiff's Complaint under to Federal Rule of Civil Procedure 12(b)(1), or, alternatively, under Rule 12(b)(6).[25]

## II.   LEGAL STANDARD

Motions filed under Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. FED. R. CIV. P. 12(b)(1). There are two types of challenges to a court's subject matter jurisdiction under Rule 12(b)(1): a "facial attack" and a "factual attack." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack challenges jurisdiction based solely on the pleadings. *Id.* When ruling on a facial attack, the court must presume that factual allegations in the complaint are true and determine whether they establish subject matter jurisdiction. *Id.* By contrast, a Rule 12(b)(1) motion presents a factual attack when the motion is accompanied by supporting evidence, such as affidavits, that contradicts the jurisdictional allegations in the complaint. *Id.* In a factual attack, the plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction. *Id.*

"It is well settled that on a 12(b)(1) motion the court . . . may even resolve issues of contested facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Because at issue in a 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is

---

[23] *Id.* at 53 ¶ 6.
[24] Pl.'s Am. Compl., ECF No. 12.
[25] Def.'s Mot. to Dismiss, ECF No. 19.

substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). In doing so, a court may consider any of "three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.2d 657, 659 (5th Cir. 1996). In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Williamson*, 645 F.2d at 413.

Because a 12(b)(1) motion concerns a court's power to hear the case, when a 12(b)(1) motion is brought with other Rule 12 motions to dismiss, the 12(b)(1) motion must be addressed first. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### III. ANALYSIS

In his First Amended Complaint, Plaintiff brought one cause of action claiming Defendant violated the Railway Labor Act ("RLA") for termination of his employment in retaliation for engaging in union activities. Defendant now moves to dismiss this case under Rule 12(b)(1) for RLA preclusion. Alternatively, Defendant moves to dismiss Plaintiff's claim under Rule 12(b)(6) for failure to state a claim.

Having reviewed the parties' briefing, evidence, and applicable law, the Court determines that Plaintiff has failed to prove by a preponderance of the evidence that the Court has subject matter jurisdiction. *See Paterson*, 644 F.2d at 523. Because the Court lacks jurisdiction to hear this case, the Court does not reach Defendant's Motion to Dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court does have not subject matter jurisdiction

over Plaintiff's claims because the adjudication of his factual questions is "conclusively resolved" by interpreting the CBA and LCA. *See Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 305 (1989).

### A. This Case is a Minor Dispute

The RLA, which was amended in 1936 to cover the airline industry, sets up a mandatory arbitral mechanism to handle certain grievances arising out of collective-bargaining agreements. 45 U.S.C. § 151 *et seq.*; *see Hawaiian Airlines Inc. v. Norris*, 512 U.S. 246, 248 (1994). The collective-bargaining process, which "lies at the core of our national labor policy," is "aimed at effecting workable and enforceable agreements between management and labor." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79 (1977). "A collective bargaining agreement is an effort to erect a system of industrial self-government." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 580 (1960). It "covers the whole employment relationship," including the rights and duties of employees and management. *Id.* at 578–79. "The grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." *Id.* at 581.

In 1972, the Supreme Court clarified that disputes classified as "minor" disputes must be resolved in arbitration before the Railway Labor Board, depriving federal and state courts of jurisdiction over such claims. *See Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 322 (1972) (dispelling "the notion that the grievance and arbitration procedures provided for minor disputes in the Railway Labor Act are optional, to be availed of as the employee or the carrier chooses"). In practical terms, if a dispute brought before a court is a "minor" dispute, then the RLA precludes or preempts that claim. *Compare Carmona v. Sw. Airlines Co*., 536 F.3d 344, 348 (5th Cir. 2008) (RLA preclusion) *with Norris*, 512 U.S. at 246 (RLA preemption).

A "minor" dispute "grow[s] out of grievances or out of the interpretation or application of [collective-bargaining] agreements." 45 U.S.C. § 153(i). The Supreme Court has further clarified that a dispute is "minor" if it "may be *conclusively resolved* by interpreting the existing agreement." *Consol. Rail Corp.*, 491 U.S. at 305 (emphasis added). "To state that a claim can be conclusively resolved by interpreting a CBA is another way of saying that the dispute does not involve rights that exist independent of the CBA." *Carmona*, 536 F.3d at 348 (internal quotations and citation omitted).

It is well established that cases involving employee discipline are generally treated as "minor disputes" and thus deprive the Court of jurisdiction. *See Bhd. of Locomotive Eng'rs & Trainmen v. Union Pacific R.R. Co.*, 31 F.4th 337, 340 (5th Cir. 2022) ("Most claims challenging employee discipline qualify as minor disputes that must be routed through arbitration."); *see also Wright v. Union Pacific R.R. Co.*, 990 F.3d 428, 435 (5th Cir. 2021) (recognizing that an employee's RLA claim "is a minor dispute if [the employee's] termination was arguably justified by the terms of the parties' collective-bargaining agreement").

Plaintiff argues that Defendant violated the RLA by "interfering with bargaining unit employees' choice of representative and/or organization by effectively dictating who their union representative would be by discriminatorily terminating his employment."[26] 45 U.S.C. § 152 (Third), (Fourth). However, Plaintiff's argument proves too much. Plaintiff was initially terminated while a union representative for theft.[27] Plaintiff's return to work after the initial termination was only allowed because of his LCA.[28] Now, Plaintiff argues that despite his initial

---

[26] Pl.'s Am. Compl. ¶ 49, ECF No. 12.
[27] Def.'s App. Supp. Mot. to Dismiss 47 ¶¶ 7, 9, ECF No. 20.
[28] *Id.* at 5 ¶ 20.

7

theft and subsequent failure to comply with his LCA, the terms of this settlement cannot apply because he is a union representative.

Plaintiff's claim of retaliatory termination is, in substance, a disagreement with and a challenge of Plaintiff's termination for violations of his LCA. Plaintiff argues that the violation of the LCA is pretextual and used to cover Defendant's anti-union animus. However, the facts demonstrate that Plaintiff's termination was "arguably justified by the terms of the parties' collective-bargaining agreement." *Wright*, 990 F.3d at 435.

Last chance agreements supplement, and in some instances supersede, provisions of bargaining agreements and are subject to the terms of the RLA. *See Int'l Union of Operating Eng'rs, Local 351 v. Cooper Nat. Resources, Inc.*, 163 F.3d 916, 919 (5th Cir. 1999) (holding that "last chance agreements constitute formal contractual settlements of labor disputes" that "should be construed as superseding a CBA in certain circumstances because an LCA reflects the parties' own construction of the CBA"). Defendant arguably acted consistent with the CBA and LCA by terminating Plaintiff.

After Plaintiff was found stealing from the Admirals Club,[29] Defendant placed Plaintiff on his LCA.[30] This agreement explicitly stated that "any single incident of a violation of the Company's policies and procedures, including but not limited to, the Rules of Conduct, during the term of this agreement will be just cause for Employee's immediate termination."[31] Furthermore, it is also undisputed that Plaintiff was in the Admirals Club, which precipitated his termination.[32] To adjudicate this dispute squarely places the Court in the position to resolve an issue that "may

---

[29] *Id.* at 46–47 ¶ 5.
[30] *Id.* at 5 ¶ 20.
[31] *Id.* at 34.
[32] Pl.'s Am. Compl. ¶ 8, ECF No. 12.

be conclusively resolved by interpreting the existing agreement," namely, the CBA and the LCA. *Consol. Rail Corp.*, 491 U.S. at 305. The Court cannot do so.

Plaintiff's attempt to shift Defendant's factual jurisdictional attack into an attack on the merits is improper. Defendant factually challenges the Court's jurisdiction, namely, that this is a minor dispute and Plaintiff "cannot clear the jurisdictional hurdle of anti-union animus."[33] This does not implicate the merits of Plaintiff's claim. Plaintiff argues that his RLA Third and Fourth violation provides him with a "right of action [that] is private to the employee"[34] and, as such, does not require an interpretation of the CBA or LCA.

Because Defendant factually attacks jurisdiction by attaching exhibits, Plaintiff must show by a preponderance of the evidence that jurisdiction exists. *See Paterson*, 644 F.2d at 523. To do so, Plaintiff need only convince the Court that adjudication of his factual questions does not depend on the CBA and LCA for resolution. *See Carmona*, 536 F.3d at 351 n.25 (citing *Brown v. Illinois Cent. R.R. Co.*, 254 F.3d 654 (7th Cir. 2001)). The Court concludes that he does not satisfy his burden.

Plaintiff relies heavily on *CareFlite v. Office and Professional Employees International Union, AFL-CIO*, to support the proposition that his RLA right to be free from union-related retaliatory termination is not a minor dispute.[35] 766 F. Supp. 2d 773, 777 (N.D. Tex. 2011). However, *CareFlite* is factually and legally distinct from this matter. The plaintiff in *CareFlite* "engaged in activities protected by the RLA, including, but not limited to, his advocacy for pilots rights, his participation in the collective bargaining negotiations and his participation in the arbitration over this June 6, 2006 discharge." *Id.* at 778. Additionally, the corporation's defense

---

[33] Def.'s Reply in Supp. Mot. to Dismiss 2, ECF No. 22.
[34] Pl.'s Resp. in Opp'n. 3 n.1, ECF No. 21 (emphasis omitted).
[35] *Id.* at 3–6.

only required a "reference to" the collective bargaining agreement, not an "interpretation [of] the CBA" *Id.* at 779 (emphasis omitted).

Here, Plaintiff's claim for retaliatory discrimination requires adjudicating whether the CBA and LCA support the termination of Plaintiff *for cause*. Unlike *CareFlite*, Defendant and the Union have a good relationship and the Union is not a party to this suit.[36] Moreover, Plaintiff here is a low-level union representative; he does not engage in high-level negotiations like the *Careflite* Plaintiff. *Id.* at 778.

The mere fact that rights asserted under the RLA are private does not automatically grant the Court jurisdiction. Even private rights can constitute minor disputes if the CBA is implicated. *See Polk v. Amtrak Nat'l R.R. Passenger Corp.*, 66 F.4th 500, 506 (4th Cir. 2023) (holding a Title VII claim could constitute a minor dispute, despite being an independent federal cause of action, because to hold otherwise would allow parties to "'cavalierly bypass' the regular grievance process and arbitration and head straight to federal court merely by adding allegations of discrimination to a complaint"). Plaintiff's case is a quintessential minor dispute because it "grow[s] out of grievances or out of the interpretation or application of [collective-bargaining] agreements." 45 U.S.C. § 153(i). Plaintiff's arguments rely on "the meaning or proper application of a particular provision with reference to a specific situation." *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945).

The Fifth Circuit in *Wright v. Union Pacific Railroad Company* affirmed the district court's dismissal of an employee's cause of action under the RLA Third and Fourth as a "minor dispute." 990 F.3d at 435. The Circuit explained that "[i]f there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor." *Id.* (quoting *BNSF Ry. Co. v. Int'l Ass'n of*

---

[36] Def.'s Mot. to Dismiss 20, ECF No. 19.

*Sheet Metal, Air, Rail & Transp. Workers – Transp. Div.*, 973 F.3d 326, 335 (5th Cir. 2020). Accordingly, because this case requires an interpretation of the CBA and LCA, this is a minor dispute of which the Court does not have jurisdiction.

### B. Plaintiff Did Not Plead Animus

As an exception to the exclusive jurisdiction of minor disputes, the Court may, despite the existence of a binding collective bargaining agreement, have jurisdiction in special circumstances. One of which is when an employee demonstrates "anti-union animus." *Carter v. Transp. Workers Union of Am. Loc. 556*, 353 F. Supp. 3d 556, 571–77. Despite this attempt to afford the Court jurisdiction under this exception, Plaintiff has failed to do so here.

Courts addressing anti-union animus have applied the exception sparingly, recognizing that the standard is high to establish animus exists. *Id.*; *see also Tello v. Soo Line R. Co.*, 772 F.2d 458, 462 (8th Cir. 1985) (finding no anti-union animus when the allegations were targeted towards employer actions taken against a union representative, as an individual). Plaintiff's argument here is that because he made a few safety compliance complaints and was later fired, Defendant harbors anti-union animus.[37] However, his own facts admit the contrary, that he was terminated after a violation of the LCR.[38] Additionally, Plaintiff's then-fellow employees who are the source of Defendant's alleged anti-union animus (Cole and Lariviere) "are themselves former members of the union who ceased membership only when they were no longer employed in the bargaining unit."[39] Finally, the two employees, both union members, who were also placed on an LCA for stealing food from the Admirals Club complied with their LCAs and remain presently employed with Defendant.[40]

---

[37] *See* Pl.'s Am. Compl., ECF No. 12.
[38] *See id.* ¶¶ 38, 41 (admitting he was in the Admirals Club).
[39] Def.'s Mot. to Dismiss 20, ECF No. 19.
[40] Def.'s App. Supp. Mot. to Dismiss 53 ¶ 6, ECF No. 20.

In sum, the Court cannot accept these conclusory allegations of anti-union animus. *See Stewart v. Spirit Airlines, Inc.*, 503 F. App'x 814, 820–21 (11th Cir. 2013) (declining to find the requisite anti-union animus when the plaintiff "provide[d] only conclusory allegations and no facts to support the proposition that any of the Defendants harbored anti-union animus"). Anti-union animus provides the Court with jurisdiction in an "exceptional circumstance." *Bhd. of Locomotive Eng'rs & Trainmen*, 31 F.4th at 345–46. These circumstances are not present here.

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. The Court holds that it does not have subject matter jurisdiction Plaintiff's claims under Rule 12(b)(1). Accordingly, Plaintiff's claim is **DISMISSED without prejudice.**

**SO ORDERED** on this **10th day** of **January, 2025**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**